Order filed June 6, 2025.      2025 IL App (5th) 240289
Motion to publish granted
June 26, 2025.                   NO. 5-24-0289

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MATTHEW E. CARTER, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 11-L-1305 |
| THE CITY OF ALTON, | ) ) ) | Honorable Ronald S. Motil, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court, with opinion. Justices Moore and Boie[*] concurred in the judgment and opinion .

**OPINION**

¶ 1      The plaintiff, Matthew E. Carter (Carter), filed a class action complaint against the defendant, the City of Alton (Alton), challenging the constitutionality of Alton's impoundment ordinance, which requires violators to pay an administrative tow fee when their vehicle is used in the commission of certain offenses. The trial court dismissed the complaint on October 25, 2013, and Carter appealed. On May 2, 2015, this court reversed and remanded, finding that Alton failed to allege affirmative matter that would preclude the case from going forward, and assuming that the allegations of Carter's complaint were true, the complaint stated a basis upon which relief

_____

[*]This case was originally assigned to Justice Welch. For administrative reasons Justice Boie has been substituted on the panel for Justice Welch. Justice Boie has read the briefs in this case and has listened to the recording of oral argument.

1

could be granted. *Carter v. City of Alton*, 2015 IL App (5th) 130544. Thereafter, Carter amended his complaint three times. Alton filed a motion to dismiss and to strike Carter's final amended complaint on December 8, 2022. The trial court granted Alton's motion to dismiss on September 18, 2023, and then denied Carter's motion to reconsider on February 2, 2024. Carter appeals from the dismissal of his complaint and from the denial of his motion to reconsider. For the reasons that follow, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3                                  A. The Ordinance

¶ 4      In 2010, Alton enacted ordinance No. 7164, which added provisions to the Alton City Code for towing and impoundment of vehicles. The statement of purpose for the ordinance provides that "(1) certain activities negatively affect the quality of life in Alton and the health, safety, and welfare of people in the community; (2) certain crimes require members of the police force 'to devote a significant amount of time [in processing] *** motor vehicles'; and (3) time spent on impoundment of vehicles takes away time the officers could spend working to protect the residents of Alton." *Carter*, 2015 IL App (5th) 130544, ¶ 5. The statement of purpose continues:

> "in order to recover a portion of the resources expended in the towing and impoundment of motor vehicles made necessary or appropriate by concern about the condition of the driver or because of the involvement of the motor vehicle with certain criminal charges, it is found by the City Council that it is in the best interest of the health, safety and welfare of the City of Alton to adopt rules and regulations associated with the towing and/or impoundment of private motor vehicles."

¶ 5      The ordinance at issue states:

"A. Members of the City of Alton Police Department are hereby authorized to remove or cause to be removed, any motor vehicle from a street or highway to a place of safety or to a motor vehicle storage facility approved by the City of Alton or otherwise maintained by the City of Alton under the circumstances hereinafter enumerated and to impound such motor vehicle until all fees and charges as provided in this Chapter have been paid, satisfied or challenged as provided for by this Chapter.

* * *

6. When any motor vehicle, operated with the express or implied permission of the owner or owner of record, is used in connection with the following violation, it shall be subject to seizure, removal and impoundment by order of a member of the Police Department of the City of Alton, and the owner or owners of record of said motor vehicle shall thereafter be liable to the City of Alton for a Level 1 Administrative Fee, as provided for in this Chapter, together with any towing and storage fees incurred, as provided by this Chapter.

* * *

c. Driving under the influence (DUI) of alcohol, drugs or intoxicating compounds as defined by the State of Illinois in Section 5/11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501." Alton City Code § 8-8-10(A)(6)(c) (eff. Jan. 1, 2010).

¶ 6    The ordinance sets out a three-tiered system of fees. *Id.* § 8-8-11(A). Alton charges a level 1 fee of $500 if the vehicle is towed in connection with an arrest for any felony or specific traffic offenses, including driving under the influence (DUI). *Id.* § 8-8-10(A)(6). Alton charges a level 2 fee of $200 if the vehicle is impounded pursuant to a custodial arrest for misdemeanors or traffic

3

offenses not included in the list of level 1 traffic offenses. *Id.* § 8-8-10(A)(7). Alton charges a level 3 administrative fee of $100 if the vehicle is towed and impounded for any other reason—those reasons include abandoned, disabled, and illegally parked vehicles. See *id.* § 8-8-10(A)(8), (A)(1)-(5).

¶ 7        Section 8-8-11(C) of the Alton City Code details the foundation for, and payment of, the administrative fee:

> "Before the owner of record or other person entitled to possession of any motor vehicle impounded by authority of the Police Department of the City of Alton [can reclaim the motor vehicle], an administrative fee shall be paid to the City of Alton. *** The appropriate fee shall be paid at the City of Alton Police Department prior to the release of the motor vehicle as partial reimbursement to the City of Alton Police Department in compensation for the time and resources spent by the Department regarding the seizure, impoundment and release of said motor vehicles. ***" *Id.* § 8-8-11(C).

¶ 8        Alton also provided the impounded vehicle's owner the right to an administrative hearing:

> "At the time a motor vehicle is seized, removed or impounded or within five (5) business days *** by order or direction of *** the City of Alton, the City of Alton shall notify *** the owner or owners of record of the owner's right to request an administrative hearing to challenge whether violation of this Chapter has occurred or to contest the administrative fee imposed in connection with the seizure or impound of the motor vehicle. *** The Chief of Police shall serve as a hearing officer, or he may designate another individual to serve as a hearing officer on a case-by-case basis. No person involved in the particular seizure, removal or impoundment decision or process may serve as a hearing officer.

4

If, after the hearing, the hearing officer determines by a preponderance of the evidence presented that the motor vehicle was properly subject to seizure, removal and impoundment *** then the hearing officer shall enter a written order finding the owner or owners of record of the respective motor vehicle civilly liable to the City of Alton for the applicable administrative fee as provided by this Chapter.

If, after a hearing, the hearing officer does not determine *** that the motor vehicle was properly subject to seizure and impoundment ***, then the hearing officer shall enter a written finding for the record owner and grant such relief as may be appropriate, including waiver of all or a portion of the administrative fee and the return of the motor vehicle to the record owner.

\* \* \*

The owner or owners of record may elect to pay the administrative fee deemed necessary to redeem the motor vehicle without constituting a waiver of the right of the owner or owners of record to request an administrative hearing ***." *Id.* § 8-8-11(H).

¶ 9                                B. Procedural Background

¶ 10    On December 6, 2011, Carter filed his complaint against Alton alleging that he was arrested for DUI, that his car was towed and impounded pursuant to Alton's ordinance, and that he was required to pay the mandated administrative fee. He challenged the administrative fee alleging that the "tow release fees" require only a minimal amount of time and expense by Alton "requiring only the Defendant['s] Police Department employees write a receipt for payment" of the fees. He alleged that the fees charged bore no reasonable relationship to the stated purposes of the ordinance and thus violated principles of substantive due process. The trial court entered an order directing Carter to state if he was challenging the ordinance facially or as applied. In response, Carter filed

5

his amended complaint on July 26, 2012, to more specifically allege a facial challenge to the constitutionality of Alton's ordinance.

¶ 11   Alton filed a motion to dismiss Carter's complaint and supported its motion by citing two studies it conducted to determine the costs incurred with DUI arrests. The first study was conducted by Captain Scott Waldrup of the Alton Police Department, and the second was conducted by an outside consulting firm, Maximum. The studies considered the salaries paid to the police officers for conducting traffic stops and inventory searches of the vehicles to be towed. The studies also considered the costs of booking defendants, preparing DUI reports, the costs of arraignment and collecting and processing evidence including blood tests, and the costs of housing prisoners. The Alton study outlined 16 charges for a DUI arrest, and concluded that a DUI arrest cost Alton $414.58, noting that the charges did not account for any officers compensated at the overtime rate, which would result in the fees being 50% higher. The Maximum study started with Captain Waldrup's report of the direct costs resulting from the impoundment of a vehicle, and considered numerous categories, and found that Alton incurred costs totaling $882.42 for a DUI arrest.

¶ 12   On October 25, 2013, the trial court granted Alton's motion to dismiss explaining that substantive due process does not stop a municipality from imposing a civil penalty for using a vehicle or allowing a vehicle to be used in the commission of certain offenses. In dismissing the amended complaint, the trial court heavily relied upon *People v. Ratliff*, 282 Ill. App. 3d 707, 713 (1996) (where the appellate court found that a $500 impoundment charge labeled as a fine, constituted a fee because it was a "reasonable proxy for the likely actual administrative costs incurred").

¶ 13   Carter appealed the dismissal of his amended complaint to this court. We reversed and remanded stating that the trial court must take the allegations in the complaint as true, that Carter

6

alleged facts that could potentially lead to a legal conclusion that the fees imposed by Alton's ordinance violate substantive due process, and that he had not yet had an opportunity to fully conduct discovery. *Carter*, 2015 IL App (5th) 130544, ¶¶ 45, 48.

¶ 14    Carter filed the final version of his complaint on November 7, 2022. In December 2022, Alton filed its motion to dismiss and strike the amended complaint. On September 18, 2023, the trial court granted the motion to dismiss. Carter filed a motion to reconsider that the court denied on February 2, 2024. Carter appeals the September 18, 2023, order dismissing his complaint and the court's February 2, 2024, order denying reconsideration.

¶ 15                                    II. ANALYSIS

¶ 16    Alton filed its motion to dismiss and strike Carter's third amended class action complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). The motion to dismiss was filed pursuant to section 2-619 of the Code (*id.* § 2-619) and the motion to strike was filed pursuant to section 2-615 of the Code (*id.* § 2-615).

¶ 17    Section 2-619.1 allows a party to combine a section 2-615 motion to dismiss based upon pleadings (*id.* § 2-615) with a section 2-619 motion to dismiss based upon certain defects or defenses (*id.* § 2-619), and/or a motion for summary judgment (*id.* § 2-1005). On appeal, a trial court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42 (citing *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402, (2009)). The appellate court "may affirm the dismissal on any basis supported by the record." *Id.* (citing *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008)).

¶ 18    On appeal, Carter argues that the trial court erred in dismissing his complaint because Alton's administrative fee was not rationally related to a legitimate legislative purpose, that

7

Alton's tow fee ordinance violated his substantive due process rights, that the voluntary payment doctrine did not bar him from seeking a refund of the fees he paid, and that the law of the case doctrine should have precluded the court's consideration of Alton's motion to dismiss.

¶ 19                                    A. Facial Challenge

¶ 20    The constitutionality of a municipal ordinance presents a legal question we review *de novo*. *Leehy v. City of Carbondale*, 2023 IL App (5th) 220542, ¶ 48 (citing *Carter*, 2015 IL App (5th) 130544, ¶ 18). "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully [citation], because an enactment is facially invalid only if no set of circumstances exist under which it would be valid." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008); see also *People v. Thompson*, 2015 IL 118151 (citing *People v. Garvin*, 219 Ill. 2d 104, 117 (2006)). "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity." *Napleton*, 229 Ill. 2d at 306. Moreover, even if we were to find that the language of the ordinance is unclear or ambiguous, a court "will resolve any doubt as to the statute's construction in favor of its validity." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20 (citing *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010)).

¶ 21    Municipal ordinances—just like statutes—are presumed valid. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). Thus, courts must uphold the constitutionality of ordinances if it is reasonably possible to do so. *Id.*

¶ 22    The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Jones*, 223 Ill. 2d 569, 580 (2006). If the language of the statute is clear and unambiguous, courts must not resort to aids of statutory construction. *Id.* at 580-81. The ordinance "will pass constitutional muster if it is rationally related to a legitimate governmental interest and

8

is not arbitrary or discriminatory." *Leehy*, 2023 IL App (5th) 220542, ¶ 48 (citing *Carter*, 2015 IL App (5th) 130544, ¶ 19).

¶ 23    "If there is any conceivable basis for determining that the statute is rationally related to a legitimate state interest, the law must be upheld." *People v. Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 126 (2004); *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998)). To apply the rational basis test, "a court must first ascertain the purpose of the statute to determine whether the statute's provisions reasonably implement that purpose." *Id.* ¶ 62 (citing *In re M.A.*, 2015 IL 118049, ¶ 55). As the Illinois Supreme Court stated:

> "In applying the rational basis test, we must identify the public interest that the statute was intended to protect, determine whether the statute bears a reasonable relationship to that interest, and verify whether the means chosen to protect that interest are reasonable. [Citation.] As long as there is a reasonably conceivable set of facts showing that the legislation is rational, it must be upheld. [Citation.] Whether the statute is wise or sets forth the best means to achieve the desired result are matters for the legislature, not the courts." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 29.

¶ 24    We must determine if the $500 fee in Alton's ordinance is rationally related to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Napleton*, 229 Ill. 2d at 307. In this court's previous decision, we stated: "A fee is rationally related to [the interest the ordinance is meant to advance] if the amount charged bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. "The fee need not represent the precise costs incurred by the cities," but "it 'must at least *relate*' to those actual costs." (Emphasis in original.) *Id.* (quoting *Jones*, 223 Ill. 2d at 585).

9

¶ 25    Carter argues that the only fee Alton is entitled to recover is for the "release" of the vehicle because Alton uses an outside vendor to tow and impound vehicles. Carter argues that the trial court's reliance upon this court's decision in *Leehy v. City of Carbondale* is misplaced because the underlying ordinances are different in that the Carbondale ordinance was enacted to recoup costs for investigation, arrest, and detention of offenders, and the removal, impoundment, storage, and release of the vehicle, whereas the Alton ordinance only states that the fee is to recoup costs associated with the seizure, towing, and impoundment of vehicles. While there are differences between the Alton and Carbondale ordinances, Carter's argument fails to consider the entirety of Alton's ordinance, including its preamble. Alton's stated purpose for its ordinance was to recoup "partial reimbursement to the City of Alton Police Department in compensation for the time and resources spent by the Department regarding the seizure, impoundment and release of said motor vehicles." Alton City Code § 8-8-11(C) (eff. Jan. 1, 2010). The preamble specifically states that recovery of resources expended for towing and impoundment of vehicles is made necessary by concern for the drivers involved or because crimes were committed. We find that Alton's intention was to include costs associated with the original traffic stop and attendant procedures. Therefore, the applicable fee was not merely for the issuance of a receipt as argued by Carter.

¶ 26    We also find that section 8-8-11(C) of the Alton City Code provides an additional foundation for imposition of the administrative fee. As stated previously, the $500 fee is to be paid to the Alton Police Department as "partial reimbursement *** for the time and resources spent by the Department regarding the seizure, impoundment and release of said motor vehicles." *Id.* § 8-8-11(C). We note that Alton's "seizure, impoundment and release" of a vehicle is integral to the processing of a crime. The underlying crime at issue in this case was a DUI. Thus, we find that the

10

fee "for the time and resources spent by the Department" necessarily includes the police involvement in the underlying crime that led to the vehicle's impoundment. *Id.*

¶ 27 The fees established in this ordinance were based, in part, upon the two studies commissioned by Alton where the estimated costs incurred with a DUI arrest ranged between $414.58 and $882.42. The fee imposed by this ordinance thus "bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. We find that the fees listed in this ordinance substantially correlate to the actual costs incurred by Alton. *Id.* ¶ 21.

¶ 28 We conclude that Alton's ordinance—designed to recover costs and expenses incurred by its police department in handling criminal investigations that culminate in an arrest, towing, and impoundment of the suspect's vehicle—serves a legitimate purpose and is valid. *Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa*, 211 Ill. 2d at 126; *Lumpkin*, 184 Ill. 2d at 124); *Hayashi*, 2014 IL 116023, ¶ 29. We cannot find that the ordinance is facially invalid because the wording of the ordinance and its preamble provide a set of circumstances where the ordinance would be valid. *Napleton*, 229 Ill. 2d at 305. The trial court's order dismissing Carter's complaint was appropriate as we find there was no genuine issue of material fact regarding the legitimacy of Alton's impoundment of motor vehicles ordinance. 735 ILCS 5/2-619 (West 2020).

¶ 29 B. Substantive Due Process

¶ 30 Carter next argues that the trial court erred in finding that he failed to establish a violation of his substantive due process rights. His argument is based on the theory that the ordinance only authorizes Alton to recover administrative expenses for writing or printing the receipt for the fees charged. He contends that the $500 fee for printing a receipt bears no reasonableness to the actual expenses. Carter's argument fails.

11

¶ 31     Substantive due process prevents a governmental body from taking certain action even if it provides appropriate procedural safeguards. *LMP Services, Inc. v. City of Chicago*, 2017 IL App (1st) 163390, ¶ 23 (quoting *In re Marriage of Miller*, 227 Ill. 2d 185, 197 (2007)); *Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 91 (2003). Substantive due process protects certain fundamental rights "that are deeply rooted in our nation's history and traditions." *In re Amanda D.*, 349 Ill. App. 3d 941, 946 (2004) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). "When a fundamental right is at issue, governmental action that impairs the right must be narrowly tailored to advance a compelling state interest." *Id.* (citing *Washington*, 521 U.S. at 721). The United States Supreme Court urges the exercise of caution when determining if a legislative action gives rise to a cause of action under substantive due process. *Washington*, 521 U.S. at 720.

¶ 32     The first step in analyzing a substantive due process claim is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). If a state action does not implicate a fundamental right, then it cannot implicate substantive due process. *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (finding that a $90 fine for a traffic infraction, which constituted a property interest, is too modest to implicate a fundamental right).

¶ 33     In this case, Carter argues that Alton infringed upon his constitutional right as follows: "The amount chosen for the fee in this case lacks any reasonableness whatsoever, and the City has failed to establish reasonableness." Again, he contends that the $500 fee charged was solely for the costs incurred by Alton in presenting him with a receipt.

¶ 34     The trial court concluded that Carter failed to establish that Alton implicated a fundamental right because the challenge involved only the deprivation of a property interest. *Idris*, 552 F.3d at 566. Carter argues that he does not need to allege a violation of a fundamental right in a case where the law is arbitrary or capricious alone, but he cites no authority for this proposition.

12

¶ 35    A valid substantive due process claim necessarily requires a plaintiff to "allege that the decision was arbitrary and irrational and must show either a separate constitutional violation or the inadequacy of state law remedies." *PBM Stone, Inc. v. Palzer*, 251 Ill. App. 3d 390, 394-95 (1993). "[W]hen a substantive due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). "[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (Internal quotation marks omitted.) *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990).

¶ 36    The trial court ultimately concluded that Carter's substantive due process claim was defeated because he had adequate administrative remedies available within Alton's ordinance—to request an administrative hearing. Carter correctly counters that the language of Alton's ordinance only allows the administrative process to address the propriety of the seizure and impoundment and does not allow him to challenge the fee on substantive due process grounds. However, the ordinance provides a pathway to recover all or part of the $500 fee, which is the relief that Carter desires.

¶ 37    We find that Carter has failed to make a claim of a valid substantive due process violation. Because Carter's substantive due process challenge only involves deprivation of a property interest, he must establish either that state law remedies are inadequate or state an independent constitutional violation. *Lee*, 330 F.3d at 367; *PBM Stone*, 251 Ill. App. 3d at 394-95. We have already concluded that the ordinance could not legitimately be interpreted to mean that the $500

13

fee was solely for Alton's production of a receipt. Thus, we do not find that the fee is arbitrary or irrational. *PBM Stone*, 251 Ill. App. 3d at 394-95. Additionally, Carter has not established a separate constitutional violation or established that there were no adequate state remedies available. *Id.* Since Carter is at most complaining of deprivation of a property right, dismissal was proper. 735 ILCS 5/2-619 (West 2020); *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000) (citing *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999)).

¶ 38                          C. Voluntary Payment Doctrine

¶ 39     The voluntary payment doctrine is based in common law. The Illinois Supreme Court explained this doctrine in its 1902 case, *Yates v. Royal Insurance Co.*, 200 Ill. 202, 206 (1902), as follows:

> "The principle is an ancient one in the common law and is of general application. Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the state should furnish him with legal remedies to recover it back. Money voluntarily paid to another under a mistake of the law, but with knowledge of all the facts, cannot be recovered back." (Internal quotation marks omitted.)

¶ 40     This common law doctrine remains "universally recognized" today. *King v. First Capital Financial Corp.*, 215 Ill. 2d 1, 27-28 (2005). "The rule is that in the absence of fraud, misrepresentation, or mistake of fact, money voluntarily paid under a claim of right to the payment, with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion." (Internal quotation marks omitted.) *Id.* at 30. Unless there is a statute which permits recovery for the payment of these fees "improperly assessed by a municipality or utility," that person is not allowed to recover the

14

voluntarily paid fee. *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981); see also *Alvarez v. Pappas*, 229 Ill. 2d 217, 233-34 (2008) (holding that a taxpayer may not recover taxes voluntarily paid even if the taxing body illegally imposed or assessed the taxes unless the recovery is authorized by statute).

¶ 41    Whether the payment is voluntary presents a moot question if the legislature has provided a statutory remedy for the refund. *Scoa Industries, Inc. v. Howlett*, 33 Ill. App. 3d 90, 96 (1975); *Alvarez*, 229 Ill. 2d at 233-34. "Where *** the legislature has enacted a statutory remedy for a refund, a taxpayer who has voluntarily or involuntarily paid his taxes can recover them only by virtue of that statute." *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 48 (2007).

¶ 42    Here, Carter, claims that his payment of the $500 fee was compulsive and made under duress in that his vehicle was taken by Alton and he could not retrieve the vehicle until he paid that administrative tow fee. He argues that if he had refused to pay the fee, he would not have been able to get his vehicle back. In support of his argument, he cites Illinois cases where businesses who were forced to pay money under duress to avoid "disastrous effects to business" could recover that money paid. We find that Carter's argument lacks merit. See *Edward P. Allison Co. v. Village of Dolton*, 24 Ill. 2d 233, 235 (1962) (where the Village of Dolton threatened to shut down the electrical work that was being performed for the village by Edward P. Allison Co., Inc. unless the company paid certain license and inspection fees, the court concluded that the payment of the fees was involuntary); *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 546 (1908) (where Illinois Glass Company was overcharged for telephone services by the Chicago Telephone Company and did not discover the overcharged amounts until after the expiration of the applicable statute of limitations, Illinois Glass could not recover the wrongful amount paid, and the supreme court stated: "Although the defendant could not legally require payment of more than $125 per

15

year for the business telephone, and the plaintiff was not legally bound to pay more, a larger sum was voluntarily paid without fraud, mistake of fact, or other ground for annulling the contract."). The payments in both cases were not made pursuant to or otherwise governed by a statute containing an administrative method to recover the fees.

¶ 43 Conversely in this case, as noted in *Scoa Industries, Inc.* and *Alvarez*, if there is a statutory remedy for a refund, the only mechanism to recover that fee is compliance with the statute. Section 8-8-11(H) of the Alton City Code expressly provides an administrative remedy for contesting and potentially recovering the fee: "At the time a motor vehicle is seized, removed or impounded or within five (5) business days *** the City of Alton shall notify the owner *** of the owner's right to request an administrative hearing to *** contest the administrative fee imposed in connection with the seizure or impoundment of the motor vehicle." Alton City Code § 8-8-11(C). Accordingly, we agree with the trial court's conclusion that Carter's claim is barred by the voluntary payment doctrine. 735 ILCS 5/2-615 (West 2020).

¶ 44                                    D. Law of the Case

¶ 45 In the final issue raised on appeal, Carter alleges that the trial court originally denied Alton's previous motion to dismiss, and that the newer motion to dismiss (that was ultimately granted) contained nothing new. He argues that the trial court should not have allowed the relitigation of the previously decided issues pursuant to the law of the case doctrine.

¶ 46 The law of the case doctrine bars relitigation of an issue previously decided in the same case. *Swain v. City of Chicago*, 2014 IL App (1st) 122769, ¶ 9 (quoting *Krautsack v. Anderson*, 223 Ill. 2d 541, 552, (2006)). However, " '[a] trial court order becomes the "law of the case" only if there is a final and appealable order.' " *Id.* (quoting *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d 1083, 1087 (1984)).

16

¶ 47　　Here, the trial court's order denying Alton's earlier motion to dismiss was interlocutory, and therefore never became the law of the case. *Id.* ¶ 10 (citing *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119 (denial of summary judgment order was interlocutory)); see also Ill. S. Ct. R. 304 (eff. Mar. 8, 2016).

¶ 48　　To the extent that the two motions to dismiss were similar, we conclude that the trial court's reconsideration of the previous denial of a motion to dismiss was proper, and we therefore reject Carter's law of the case argument.

¶ 49　　　　　　　　　　　　　　III. CONCLUSION

¶ 50　　For the foregoing reasons, we affirm the order of the Madison County circuit court dismissing this case and denying the motion to reconsider that order.

¶ 51　　Affirmed.

*Carter, Matthew E., etc. v. The City of Alton*, 2025 IL App (5th) 240289

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 11-L-1305, the Hon Ronald S. Motil, Judge, presiding. |
| **Attorneys for Appellant:** | Donna S. Polinske, Brian L. Polinski, of Edwardsville, for Matthew E. Carter |
| **Attorney for Appellee:** | James E. Schrempf, of Alton, for The City of Alton |